## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

BARRY JOINTER,

     *Plaintiff,*

    v.

STATE OF OKLAHOMA *ex rel.*
BOARD OF REGENTS FOR THE
UNIVERSITY OF OKLAHOMA.

     *Defendants.*

Civil Action No. 5:23-cv-00068-HE

**COMPLAINT (Amended)**
**(Jury Demanded)**

**FILED**

MAY 15 2023

CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT WESTERN DIS. OKLA.
BY_____,DEPUTY

COMES NOW, Plaintiff BARRY JOINTER ("Plaintiff" or "Mr. Jointer"), appearing pro se, hereby complains and alleges against the above-named Defendant, based upon knowledge, information and a reasonable belief derived therefrom, as follows:

1

## INTRODUCTION

Mr. Jointer seeks relief to remedy violations of Title II of the Americans with Disabilities Act (Title II), Section 504 of the Rehabilitation Act of 1973 (Section 504), and his equal protection and due process rights secured by the Fourteenth Amendment to the Constitution by STATE OF OKLAHOMA *ex rel.* BOARD OF REGENTS FOR THE UNIVERSITY OF OKLAHOMA ("Defendant" or "University").

The University discriminated against Plaintiff because of his disability from fall 2021 to present. Defendant materially denied Plaintiff access to the education he is entitled to, damaged his reputation, and diminished his employment prospects. Defendants seek to compound their transgressions by threatening to dismiss Plaintiff from the Juris Doctor program.

Plaintiff has been diagnosed with moderate to severe attention deficit disorder; he informed Defendant of his disability and requested reasonable accommodations in July 2021. The University granted Plaintiff a slate of accommodations that included providing him with textbooks in an alternative format, extended time on exams, the use of a word processor, and the ability to record class lectures. Subsequently, Defendant arbitrarily deprived Plaintiff of several accommodations in his Torts, Criminal Law Classes, including his accommodation to record his class lectures which Title II and Section 504 explicitly protect. Defendant subjected Plaintiff to disability-based discrimination, sanctions, inconvenience, and penalties for the effects of his disability that resulted from Defendants' arbitrary and intentional removal of his

2

accommodations.

By illegally prohibiting his accommodations, Defendant materially denied Plaintiff access to the education he is entitled to, damaged his reputation, and diminished his employment prospects. Defendants seek to compound their transgressions by dismissing Plaintiff from the Juris Doctor program. Cumulatively and specifically, Plaintiff's grades were harmed because the University failed to provide agreed to and then failed to provide accommodations. As a result, Plaintiff's grade point average dropped just below the good academic standing threshold, limiting his ability to select his classes, delaying his expected graduation date, and damaging future employment and educational opportunities. Accordingly, Plaintiff now petitions this Court for redress in the form of injunctive relief, damages, and costs relating to violating his rights.

## **PARTIES**

1.  Plaintiff Barry Jointer is currently a resident of the State of Oklahoma and, at all relevant times, a student in the Juris Doctor Program ("JD") program in University's College of Law. He is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act (Title II) and Section 504 of the Rehabilitation Act concerning the services, programs, and activities of the University.

2.  Defendant, State of Oklahoma ex rel. the Board of Regents of the University of Oklahoma, a Constitutional State Agency (hereinafter "University" or "Defendant"), has its principal place of business in Cleveland County, State of Oklahoma.

3

3.    OU operates the University of Oklahoma College of Law in Cleveland County, State of
      Oklahoma.

4.    Defendant is a "public entity" within the meaning of the Title II of the Americans with
      Disabilities Act, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R.
      Part 35.

5.    The University's services, programs, and activities implicated herein receive federal
      financial assistance. Therefore, the Defendant is a "recipient" as defined by Section 504
      of the Rehabilitation Act of 1973.

                              **VENUE & JURISDICTION**

6.    This Court has personal jurisdiction over OU because OU has its principal place of
      business in Cleveland County, State of Oklahoma, which is in the Western District of
      Oklahoma.

7.    This court has subject matter jurisdiction over Plaintiff's claims because Plaintiff's claims
      under the Title II and Section 504 of the Rehabilitation Act arise under federal law
      pursuant to 28 U.S.C. 1331.

8.    Venue is proper in the Western District of Oklahoma pursuant to 28 U.S.C. § 1391(b)
      in that the claims arose in this district, and Defendants are located in this district.

                           **GENERAL FACTUAL ALLEGATIONS**

9.    Plaintiff is a second-year University of Oklahoma College of Law (OU Law) student. He
      enrolled in the University's Juris Doctor program in the summer of 2021 and began his
      first-year studies in August 2021. His first-year courses included Torts, Criminal Law,

                                         4

and Property.

10.  Plaintiff has been diagnosed with moderate to severe attention deficit disorder. Mr.
     Jointer's condition has a detrimental effect on his cognitive function, and he must read,
     listen or otherwise review concepts more than his non-disabled peers to gain an
     understanding of the subject material.

11.  Plaintiff notified Defendant of his disability and met with the Director of the University's
     Accessibility and Disability Resource Center in July 2021. Following this meeting, the
     ADRC committed Defendant to provide Mr. Jointer with extended time on exams, a
     reduced distraction environment for exams, "alternative print format," and the use of a
     word processor with spell and grammar check. Additionally, the agreement stated,
     "Student may record audio lectures."

12.  On September 17, 2021, Associate Dean for Graduate Programs Gail Mullins informed
     Plaintiff via email that Torts Professor E. Johnson prohibited recording class lectures
     even for students with accommodations.

13.  When Plaintiff did not respond to the September 17 email, Dean Mullins sent Plaintiff a
     second email on October 25, forbidding the recording of Torts class lectures, and
     Professor Johnson announced that the class format would temporally change due to an
     "administrative issue" and that students could not ask questions during class until the
     issue was resolved.

14.  Plaintiff requested to meet with Dean Mullins on October 25 to explain the requirements
     of Section 504 and why he needed the recording accommodation.

15.   During the meeting with the Associate Dean, she was adamant that recording Torts would not be allowed and that Professor Johnson would be willing to meet with him outside of class to review course concepts as an "alternative accommodation."

16.   Believing he had no choice but to comply with Professor Johnson's policy as relayed through the Associate Dean, Plaintiff replied, "Agreed!" to a follow-up email about the meeting with Associate Dean and complied with her directive.

17.   Plaintiff had to spend more time preparing for his Torts exam because he didn't have his accommodation, which negatively affected his other classes.

18.   Plaintiff received a passing grade in his Torts course despite Defendant's failure to implement the recording accommodation. Mr. Jointer's grade point average at the end of the fall semester kept him in good academic standing.

19.   The University enrolled the Plaintiff, in Criminal Law and other courses, for the Spring 2022 semester, which began in January 2022 and ended in May 2022.

20.   Plaintiff received an email on January 21, 2022, from his Criminal Law Instructor that stated, "I have received the accommodations notice below, and of course some are zero problem (reduced distraction exam, 1.5 times). Others, however, run up against very substantial exam security concerns (exam on computer—as opposed to, say, whatever font size you need on paper, headphones with music), and also seem much more in conflict with the fundamental practice of law. And one, recording, is indeed not permitted in my classroom as you know from the syllabus, but there we can use the alternative— we can meet after class as you need to make sure you are taking in the material."

21.    Plaintiff subsequently learned that the Criminal Law Instructor sent similar emails to other disabled students.

22.    Plaintiff met twice with the Criminal Law instructor to have his accommodation implemented. Despite these meetings, Professor Henderson was adamant that he would not allow certain accommodations in his class. Prof. Henderson told Plaintiff the University's Accessibility Resource Center (ADRC) approved "alternative accommodations."

23.    Plaintiff complained about the situation to the Dean of Academic Affairs and Dean of Student Services, but the University took no action in response to the complaint. Through these conversations (and others with the ADRC), Plaintiff learned that Prof. Henderson had developed a reputation for refusing to grant certain accommodations. Administrators knew disabled students had experienced similar problems with Prof. Henderson in prior years.

24.    Prof. Henderson made the unusual decision to personally assign students to rooms for the final exam in April 2021. All of Plaintiff's previous exams' classroom assignments were managed by Facility Support. Prof. Henderson purposefully crafted and worded an email sent to students on April 9, 2021, announcing test room assignments, in order to identify students with disabilities.

25.    Plaintiff reported the incident to the Administration on April 11, 2021. Plaintiff is still waiting to receive a response from the school.

26.    Additionally, Plaintiff learned that the Former Dean of Student Services (an Evidence

Instructor during the Spring 2022 term) also meets with students to restrict accommodations unilaterally.

27. Plaintiff received passing grades in two classes where he did not receive his accommodation, Torts, and Criminal Law; this ultimately worked against him by dropping his GPA below the acceptable academic threshold. If the passing grades in the classes where he did not receive his accommodations were converted to Pass/Fail and excluded from the calculation of his GPA, Plaintiff would have remained in good academic standing at the end of his first year.

28. Plaintiff was dismissed from the University in June 2022 because his cumulative grade point average fell Seventeen hundredths (0.17) of a point below the academic standard.

29. In June 2022, Plaintiff petitioned and was granted readmission to the University as a Student on academic probation. His status as a probationary student allowed the University to mandate various conditions for continued enrollment, including that he retake Property Law (a class he also passed).

30. Plaintiff reported above stated discrimination in an email to the University's General Counsel on July 8, 2022. The Counsel's office declined to respond to the complaint substantively. Instead, it referred the matter to the University's Office of Intuitional Equity. Plaintiff declined to interview with Intuitional Equity Office.

31. Plaintiff returned to the University for the Fall 2022 semester; he did not enroll in a class taught by Prof. Henderson.

32. During the Fall 2022 semester, class recordings for accommodated students became a

major point of debate among the student body because of a change in class format by one of the instructors.

33.    Prof. Henderson refused to lecture in an upper-division Criminal Procedure course in response to the University's policy on recording class lectures. Instead, he mandated class attendance and played pre-recorded lectures during class meeting times.

34.    This modification upset numerous students, prompting several to lodge complaints with the administration. Eventually, the University decided to give students the option to have the class graded on a pass/fail basis. However, students continued to ask Plaintiff about recording class lectures as an accommodation as recently as April 2023. Plaintiff was very unhappy being asked questions surrounding disability and accommodations.

35.    Plaintiff passed all his classes during Fall 2022 and selected four classes for Spring 2023. He did not enroll in two first-year courses required by the terms of his probation.

36.    On January 25, 2023, in a joint meeting with the Dean of Academic Affairs, and Dean of Students, Plaintiff requested the course enrollment provision of his academic probation be temporarily suspended.

37.    Specifically, Plaintiff stated that his academic probation was the direct result of disability-based discrimination. Plaintiff requested that the enrollment provision, which required him to retake two of his first-year courses, be delayed until fall 2023 to allow time to resolve his complaint. Plaintiff further stated that enforcement of the enrollment provision would prohibit him from applying for a legal intern license and delay his graduation. The pair of administrators denied Plaintiff's request but offered him priority

registration.

38.   On January 26, 2023, the Chair of the Academic Probation Committee emailed Plaintiff
      stating that if he did not enroll in the courses required by his academic probation, he
      would be automatically, permanently dismissed from the University. Under duress from
      Defendant, Plaintiff was un-enrolled from his classes in Evidence and Disability Law;
      and enrolled in the classes prescribed by the terms of his academic probation.

39.   On February 21, 2023, The Chair of the Academic Probation Committee requested a
      meeting with Plaintiff as she was concerned about his attendance in classes mandated by
      the committee. During the meeting, The Chair stated that she did not want to discuss
      matters related to his disability discrimination complaint as the committee had a narrow
      scope of responsibilities and could not consider the disability claims in its decision-
      making process.

40.   Prof. Henderson currently has a policy limiting access to class recordings to two weeks.

41.   The University has allowed information that could have only come from University
      officials regarding Plaintiff's academic probation to be relayed to his peers.

### TITLE II OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT OF 1973.

42.   Title II of the Americans with Disabilities Act of 1990 (Title II), 42 U.S.C. § 12101 et
      seq., and its implementing regulation at 28 C.F.R. Part 35, prohibit discrimination on the
      basis of disability by public entities.[1] Section 504 of the Rehabilitation Act of 1973, 29

---

[1] 42 U.S.C. § 12131 et seq.; 28 C.F.R. Part 35

U.S.C. § 701 (Section 504), and its implementing regulation at 34 C.F.R. Part 35 prohibit discrimination on the basis of disability in programs and activities operated by recipients of federal financial assistance.[2] As a recipient of federal financial assistance and as a public education entity, the University is subject to Title II, Section 504, and their implementing regulations.

43.    Section 504 regulations provide that no qualified individual with a disability shall, on the basis of disability, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any postsecondary education program of the University.[3] The Title II regulations, at 28 C.F.R. § 35.130(a), contain a similar prohibition applicable to public postsecondary educational institutions.

44.    To state a claim under Title II, a plaintiff must allege (1) he is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.[4]

45.    To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must prove (1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the benefit sought, (3) that he was discriminated against solely by reason of his handicap, and (4) that the program or activity in question receives federal financial assistance.[5]

46.    Because these provisions involve the same substantive standards, claims under both acts

---

[2] 29 U.S.C. §794; 34 C.F.R. Part 104.
[3] 34 C.F.R. § 104.43(a).
[4] *Cohon v. New Mexico Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011).
[5] *Id.* at 646 F.3d 717, 725.

are generally analyzed together.[6]

47.    The term "qualified individual with a disability" is defined as an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.[7]

48.    Under the requirements of Section 504, a student with a disability is obligated to notify the University of the nature of their disability and the need for a modification, adjustment, aid or service. Once the University receives such notice it has an obligation to engage the student in an interactive process concerning the student's disability and related needs.

49.    Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.[8]

50.    Section 504 regulations prohibit specific conduct by recipients of federal funds. A recipient to which Section 504 applies may not impose upon handicapped students' other rules, such as the prohibition *of tape recorders* in classrooms that have the effect of limiting the participation of handicapped students in the recipient's education program or activity.[9]

## CAUSES OF ACTION
## VIOLATIONS OF SECTION 504 TITLE II

---

[6] *Miller ex rel. S.M. v. Board of Educ. of Albuquerque Public Schools*, 565 F.3d 1232, 1245 (10th Cir. 2009).
[7] 42 U.S.C. § 12131.
[8] *Id.* at 159.
[9] 34 C.F.R. § 104.44(b).

51.    The Plaintiff incorporates by reference paragraphs 1-52 as though fully stated herein.

52.    At all relevant times, Plaintiff was a qualified individual with a disability as defined by Title II and Section 504. He is a second-year law student at the University of Oklahoma College of Law, admitted using the University's standard admissions process, and remains eligible to participate in the University's Juris Doctor program. In 2015, following an extensive neuropsychological evaluation, the United States Department of Veterans Affairs diagnosed Plaintiff with attention deficit hyperactivity disorder. Plaintiff's ADHD substantially limits major life activities, including learning, reading, and concentrating. He was, and is, otherwise able to perform the essential functions for participation in the University's Juris Doctor program with or without accommodations.

53.    The Defendant discriminated against Plaintiff on the basis of disability through:

### TORTS

I.    Failing to provide the recording accommodation for Plaintiff's Torts class.

II.    Failing to engage with Plaintiff in the interactive process in order to identify and provide necessary and reasonable accommodations after the removal his recording accommodation in Torts.

III.    Failing to accommodate Plaintiff's Disability after the removal of his recording accommodation in Torts.

### CRIMINAL LAW

IV.    Failing to provide the recording and word processor accommodations for Plaintiff's Criminal Law class.

V.     Failing to engage with Plaintiff in the interactive process in order to identify and provide necessary and reasonable accommodations after the removal his recording accommodation in Criminal Law.

VI.    Failing to accommodate Plaintiff's Disability after the removal of his recording accommodation in Criminal Law.

VII.   Failing to adequately respond to actual notice of the discrimination.

## HOSTILE LEARNING ENVIRONMENT

VIII.  Plaintiff asks the Court to recognize a Hostile Learning Environment Claim under Title II and Section 504,[10] Under the framework created by *Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 314 (D. Mass. 1997). To state a cognizable claim for hostile learning environment harassment under the ADA and Rehabilitation Act, a plaintiff must allege: (1) that she is a member of a protected group, (2) that she has been subject to unwelcome harassment, (3) that the harassment is based on a protected characteristic, her disability, (4) that the harassment is sufficiently severe or pervasive that it alters the conditions of her education and creates an abusive educational environment, and (5) that there is a basis for institutional liability.

IX.    Plaintiff is an otherwise qualified student with a disability that impacts a major life activity. By the acts, failures, and accepted practices of its administrators

---

[10] This claim has yet to be recognized by a binding authority.

14

and personnel, Defendant has subjected Plaintiff to harassment, excluded him from his education, diminished his law school experience, inconvenienced him, humiliated him, and delayed his eligibility to sit for the bar because he is disabled. The Plaintiff has been maliciously identified as a disabled student to his cohort by a tenured professor, the same professor who refuses to accommodate some students. The same professor caused a school-wide debate on the validity of recording as an accommodation by radically altering the format of an upper-division course. The University has been unwilling or unable to change the professor's discriminatory conduct and has made the conscious choice to tolerate it. Even more concerning is the practice of faculty members meeting with students about the nature of their accommodations, which in itself isn't a problem, but many times has led to students (including Plaintiff) being forced to give up their accommodations. Most concerning is the University's tepid response to the discrimination. The Defendant's apathetic approach to addressing disability-based complaints has created an atmosphere of tolerance for disability-based discrimination, escalating discriminatory conduct by multiple University agents. Deans and University Counsel have been made aware of the discrimination, that it stems from a discriminatory animus, and that it prevents disabled students from having equal access to their federally funded educational program.

54.     By the acts and failures of its administrators and personnel, Defendant intentionally and with deliberate indifference excluded Plaintiff benefits of his education solely because

he is disabled. As result Plaintiff has sustained injuries including, but not limited to, damage to, his academic reputation, personal reputation, financial health and emotional health. Plaintiffs' injuries are the direct and proximate result of Defendant's discriminatory actions that are in violation of Title II and Section 504. University administrators and personnel were aware of the requirements of Section 504, but deliberately dismissed its application with regard to Plaintiff. Therefore, Plaintiff is entitled to monitory compensatory damages.

55. As the entity held accountable of violations of Title II and Section 504, Defendant is liable for all of said injuries and losses caused by its employees and/or agents.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Jointer demands a jury trial for all issues in this matter.

## RELIEF REQUESTED

WHEREFORE, Mr. Jointer prays that this Honorable Court enter judgment in his favor, and against the Defendant:  (a) for Injunctive Relief to preventing Plaintiff's dismissal from OU Law or order an readmitting him to the law school as a student in good academic standing (b) specific performance (c) for compensatory damages from the Defendant in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) to be determined at trial; and (d) further relief as justice requires. DATED this 12th day of May 2023.

Respectfully Submitted,

Barry Jointer
Plaintiff
3301 12th Ave SE Unit 816
Norman, Ok 73072
Telephone: (510)612-7997
Sgtjointer@gmail.com